Michael D. Rounds
Nevada Bar No. 4734
Arthur A. Zorio
Nevada Bar No. 6547
BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
Telephone: 775.324.4100
Facsimile: 775.333.8171
Email: mrounds@bhfs.com
azorio@bhfs.com

*Attorneys for Defendant*
*Stephen Campbell*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRIAN SCIARA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN CAMPBELL,<br><br>Defendant. | CASE NO.: 2:18-cv-01700-RBF-CWH<br><br>**DEFENDANT STEPHEN CAMPBELL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF No. 1]** |

Defendant Stephen Campbell ("Campbell") hereby moves to dismiss the Complaint of Plaintiff Brian Sciara ("Sciara") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and alternatively for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Sciara has filed suit attempting to gain control of and profit from a business built by Campbell and with Campbell's capital. Campbell has numerous meritorious defenses to Sciara's claims but, as a threshold and dispositive matter, this Court lacks personal jurisdiction over Campbell. The principal place of business for Sprout Financial, the targeted business, is Phoenix, Arizona and Campbell has resided there since 2004. There is no other connection that Campbell



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

has with Nevada under the facts of this dispute that warrants a finding of either general or specific jurisdiction based upon a contract, tort or other theory. Because the Court lacks personal jurisdiction over Campbell, this action must be dismissed.

## II. STATEMENT OF FACTS

### A. Sciara and Campbell do not have a Contract

Defendant Campbell resides in Phoenix, Arizona and has since 2004. Declaration of Stephen Campbell ("Campbell Decl."), ¶ 2.

In 2007, Mr. Micah Kinsler and Campbell became co-owners/members in an Arizona limited liability company, MiCamp Solutions, LLC. Campbell Decl. ¶ 3. MiCamp Solutions provides credit card payment processing services for merchants. *Id*

In 2009 Sciara began referring business to MiCamp Solutions and received a commission for the referrals he provided. Campbell Decl., ¶ 4. Between 2010 and 2012, Sciara shared with Campbell details about CapFund Financial, a business that provided credit brokering business services related to credit card stacking. Campbell Decl., ¶ 5.

Credit card stacking is where a credit broker helps an individual acquire unsecured credit by applying for multiple unsecured credit cards at the same time. Campbell Decl., ¶ 6. The broker's knowledge of what credit cards an individual may qualify for provides the broker the ability to quickly locate unsecured credit for the individual. *Id*. The credit cards are applied for by the individual with the assistance of the broker or the broker as an agent of the individual. *Id*. The credit broker charges a percentage of the total amount of credit obtained for the individual as its fee for the service of locating and assisting in applying for the credit. *Id*. The individual is responsible for paying back the credit card issuers according to the terms of credit entered into among the individual and the issuer. *Id*.

In 2014 Sciara approached Campbell in Phoenix, Arizona and provided more details about CapFund Financial's credit card stacking business. Campbell Decl., ¶ 7. While in Phoenix, Sciara proposed either selling his CapFund Financial business or continuing that business jointly with Campbell and Mr. Kinsler. *Id*. At that time, Mr. Kinsler and Campbell did not see the value in CapFund Financial to purchase it. *Id*. Instead of a purchase, however, Campbell proposed to



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Sciara that he provide assistance to him for the business. *Id*. In exchange, he would receive either compensation or an equity interest in a newly formed "sprout business" operated under MiCamp Holdings, that was to be a separate business from CapFund Financial. *Id*.

Over a short period of time, an ownership interest of 20% in the new "sprout business" was discussed, along with profit share plans, revenue share plans, and other terms. Campbell Decl., ¶ 8. The substance of these discussions took place in person at 6930 E. Chauncey Lane, Phoenix, Arizona 85054. *Id*. The newly formed business was to be run out of Phoenix, Arizona. *Id*.

In late September of 2014, a proposed operating agreement containing terms to co-own the business was sent to Sciara. Campbell Decl., ¶ 9. On October 24, 2014, Sciara rejected the terms of doing business with Campbell. Campbell Decl., ¶ 9 & Ex. 1.

In late 2014 Sprout Financial developed and operated its credit card stacking business separate from Sciara and his CapFund Financial business. Campbell Decl., ¶ 10. Over time, and through a lot of trial and error learning what credit facilities are available (and upon what terms) by inquiring with credit card issuers and processing applications, algorithms were developed by Sprout Financial and its employees in Phoenix, Arizona independent of Sciara. *Id*.

In May 2016, Campbell received a call in Phoenix, Arizona from Sciara. Campbell Decl., ¶ 11. Sciara proposed to merge CapFund Financial with Sprout Financial. *Id*. Terms were discussed, but no agreement was entered into. *Id*. Campbell told Sciara that that before they could agree to own a business together, Sprout Financial must be separated from MiCamp and Mr. Kinsler. *Id*.

In March of 2018, Campbell completed the separation of Sprout Financial from MiCamp. Campbell Decl., ¶ 12.

On April 5, 2018, Campbell went to Las Vegas for purposes unrelated to Sprout Financial. *Id*. Sciara and Campbell met briefly then, but did not continue discussions regarding either Sprout Financial or owning a business together at that time. *Id*.

Sciara flew to Phoenix, Arizona on April 27, 2018, and he and Campbell played golf at the Dove Valley Ranch Golf Club. Campbell Decl., ¶ 13. While playing golf, Sciara and



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Campbell again discussed the potential of owning Sprout Financial together. *Id.* Campbell proposed that Sciara have a 20% equity interest in Sprout Financial and a 3% equity interest in three of Campbell's other companies which he was starting to develop. *Id.* Sciara did not accept that proposal. *Id.*

On May 1, 2018, Campbell followed up on the offer he made in Phoenix, Arizona on April 27, 2018 with an email to Sciara stating as follows:

> Also want to know if you've had additional thoughts on below.
>
> $20K/mo guaranteed payment with active role
> Biz Development commission 10-20%
> BD commissions must exceed base salary in order for BD commissions to kick in. BD accounts include current CapFund accounts and other accounts brought in
> On liquidity event, 20% of proceeds
> Annual profit sharing distribution of 20% (after I'm paid back a match of your guaranteed payment from 2017)
> 3% of profit share distribution of 3 companies (SPEX, CR, DF).

Campbell Decl., ¶ 14 & Ex. 2. Sciara rejected that proposal the same day. Campbell Decl., ¶ 15 & Ex. 2.

To summarize, as of today's date, there has never been an agreement among Sciara and Campbell where they have agreed to the terms of owning a business together, be it Sprout Financial or otherwise. Campbell Decl., ¶ 16.

**B. Sprout Financial is a Business in Phoenix, Arizona with Minimal and Insufficient Nevada Contact**

Sprout Financial's offices were at 6930 E. Chauncey Lane, Phoenix, Arizona 85054 from 2014-2017 and, in 2017, moved to 5415 E High Street, Phoenix, AZ 85054. Nearly forty (40) employees work for Sprout Financial at the 5415 E High Street office location. Campbell Decl., ¶ 17. Sprout Financial currently has only one part-time employee in Nevada (Mr. Shawn Kinney) who provides consulting services to Sprout Financial's operations and sales department, and who travels to Phoenix, Arizona 50% of the time he spends performing his part-time job. *Id.*

Sprout Financial advertises its business all over the United States and has customers throughout the country. Campbell Decl., ¶ 18. Business in the State of Nevada accounts for less than 1% of Sprout Financial's total revenue. *Id.*



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Sprout Financial has no property or banking accounts in the State of Nevada. *Id.* Over the past 4 years, Campbell has traveled 4-5 times (total) to Las Vegas to discuss Sprout Financial business or to meet with a referral vendor. *Id.* Of those 4-5 trips, one was a meeting in Las Vegas with a referral vendor that has its operations based in Utah, not Nevada. *Id.*

None of the above facts, alone or in combination, warrant the exercise of personal jurisdiction over Campbell in Nevada.

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT STEPHEN CAMPBELL

The Complaint does not state facts to support personal jurisdiction over Campbell, in violation of the admonitions of *Twombly* and *Iqbal*. *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The Complaint only makes the following conclusory statement in paragraph 1: "The Court has personal jurisdiction over Campbell based upon his contacts to Nevada out of which these claims arose." ECF No. 1, ¶ 1. Neither this conclusory allegation, nor the vague references in paragraph 14 that lack personal knowledge or foundation, can support Sciara's claim for personal jurisdiction.

Rule 12(b)(2) provides in pertinent part: "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion … (2) lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). A federal district court has personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the court sits. Fed. R. Civ. P. 4(k)(1)(A).

This Court follows Nevada law in determining the bounds of its jurisdiction over persons. *Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." NRS 14.065. Therefore, this Court's inquiry regarding personal jurisdiction is to determine if the exercise of personal jurisdiction over Campbell, a resident of Arizona, "comports with the limits imposed by federal due process on the State of Nevada." *Daimler AG*, 571 U.S. at 125; *Bristol-Myers Squibb Co. v. Super. Ct. of Cal. San Francisco Cty.*, ___ U.S. ___, ___ 137 S.Ct. 1773, 1779, 198 L.Ed. 2d 395, 402 (2017).



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

A non-resident defendant cannot be subject to the jurisdiction of a state's court unless that defendant has at least minimum contacts with the forum state, such that the lawsuit does not offend traditional notions of fair plan and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The burden is on Plaintiff Sciara to show that this Court has jurisdiction over Defendant Stephen Campbell. *Picot v. Weston*, 780 F.3d 1206, 2011 (9th Cir. 2015). Where a court resolves a motion to dismiss without holding an evidentiary hearing, the plaintiff must "make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citations omitted). When evaluating the plaintiff's *prima facie* showing, all "uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party." *Morrill*, 873 F.3d at 1141.

There are two types of personal jurisdiction: "general" and "specific." *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1779-80. Neither type can be met in this action.

**A. General Personal Jurisdiction**

An individual is subject to general jurisdiction in the individual's domicile where the court may hear any claim against that defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in a state where the individual is not domiciled. *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780.

The standard to find general jurisdiction in the forum is an exacting one which is met only by showing "continuous" contacts within the forum that are "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *King v. Am. Family Mut. Ins., Co.*, 632 F.3d 570, 579 (9th Cri. 2011) (quoting *International Shoe Co.*, 326 U.S. at 318). The nature of such contacts must render the defendant "essentially at home in the forum State." *Daimler AG*, 571 U.S. at 139 (citation and quotations omitted).

Only "a limited set of associations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, a paradigm forum for the exercise of general



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG*, 571 U.S. at 137 (quotations and citation omitted). "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler AG*, 571 U.S. n.20 at 139.

Here, it is undisputed that Campbell, an individual, is not a resident of Nevada. ECF No. 1, ¶ 3. There are no facts alleged in the Complaint, nor do any exist, which could satisfy the exacting standard to establish general jurisdiction over Campbell. *Cf. CollegeSource, Inc. v. Academy One, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) ("Marketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction."), citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, n.7 at 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991) (no general jurisdiction despite advertising in the local media, the mailing of brochures and the payment of commissions to forum travel agents, and the conducting of promotional seminars)), *and Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (no general jurisdiction despite solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779 (1984) (no general jurisdiction despite circulation of 10,000-15000 copies of nonresident defendant's magazine in forum per month); *see also Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226-27 (9th Cir. 2011) (operation of interactive website does not confer general jurisdiction).

**B. Specific Personal Jurisdiction**

An individual is subject to specific personal jurisdiction if a defendant has sufficient minimum contacts with the forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot,* 780 F.3d at 1211, quoting *Schwarzenegger*, 374 F.3d at 802. Plaintiff has the burden to establish the first two elements, and if successful, the burden shifts to the defendant to show that that the exercise of jurisdiction would not be reasonable. *Picot*, 780 F.3d at 1211-12. The form of the inquiry depends on whether the claim(s) asserted sound in contract or tort. *Picot*, 780 F.3d at 1212.

Plaintiff does not clearly identify the claim for relief it asserts in each of the causes of action plead. However, the Complaint asserts in paragraph 5 that the claims asserted are for declaratory relief, "breach of confidential relationship, fiduciary duty, and contract, both express and implied, and in the alternative unjust enrichment." ECF No. 1, ¶ 5. Campbell therefore addresses these claims in his motion.

**1. Contract-based claims**

Sciara's declaratory relief, breach of contract, and unjust enrichment claims sound in contract. ECF No. 1, at ¶¶ 5, 23-28 (declaratory relief), 46-50 (contract), 51-54 (unjust enrichment). A "claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort." *Sanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996). A "claim for declaratory judgment as to the existence of a contract is an action sounding in contract." *Picot*, 780 F.3d at 1212, *citing Stanford Ranch, Inc*., 89 F.3d at 625.

"An action based upon a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997). Unjust enrichment is the "unjust retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Products Corp. v. All Star Ready Mix. Inc.*, 111 Nev. 799, 802, 898 P.2d 699, 701 (1995); *Coury v. Robison*, 115 Nev. 84, 90, 976 P.2d 518, 521 (1999). A court will imply a quasi-contract to grant unjust enrichment only "where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice should not be



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

retained." *LeasePartners Corp.* 113 Nev. at 756, 942 P.2d at 187. Claims of unjust enrichment therefore sound in contract. *See Gunn v. Wild*, 2018 U.S. Dist. LEXIS 8042, *15, 2018 WL 473005 (D. Nev. 2018).

**2. Tort Claims**

A claim for breach of fiduciary duty, ECF 1, ¶¶ 5, 42-54, may be taken as either a contract or a tort claim, depending upon the nature of the claim. *See, Relmada Therapeutics, Inc. v. Laidlaw & Co. (UK)*, 216 U.S. Dist. LEXIS 134663, *6 (D. Nev. 2016), *citing Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963). In the case at bar, the claimed breach of fiduciary duty emanates (wrongly) from an alleged business or confidential relationship, but not apparently upon a specific term of a contract, and thus is a claim sounding in tort.

Breach of a confidential relationship, ECF No. 1, ¶¶ 5, 37-41, is in reality a tort claim for constructive fraud. *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 529-30 (1982).

**C. Specific Personal Jurisdiction - Contract**

The Supreme Court and the Ninth Circuit have made it clear that for a non-resident defendant to be subject to specific personal jurisdiction on the basis of a contract, the contract itself must have a substantial connection with the forum state. The Ninth Circuit applies a "purposeful availment" analysis, asking "whether a defendant 'purposefully avail{ed} {himself} of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot*, 780 F.3d at 1212, quoting *Schwarzenegger*, 374 F.3d at 802.

A "contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212, quoting *Boschetto v. Hasing*, 539 F.3d 1011, 1017 (9th Cir. 2008). The factors considered are, "[(1)] prior negotiations and [(2)] contemplated future consequences, along with [(3)] the terms of the contract and [(4)] the parties' actual course of dealing.". *Picot*, 780 F.3d at 1212, *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

In *Picot*, the plaintiff contended that defendant entered into a contract with plaintiff (who was a resident of the forum) and that defendant regularly corresponded with the plaintiff. *Picot*, 780 F.3d at 1212-13. The plaintiff argued that a purported oral agreement with plaintiff created a



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

substantial connection between the defendant and the forum because the plaintiff fulfilled obligations under the oral agreement in the forum. *Picot*, 780 F.3d at 1213. This contention was rejected because the plaintiff's contacts with the forum are irrelevant. *Id.*

In *Picot*, plaintiff also argued that the course of dealing among plaintiff and defendant, including defendant's two trips to the forum, subjected him to personal jurisdiction. *Picot*, 780 F.3d at 1213. However, a "defendant's transitory presence will support jurisdiction only if it was meaningful enough to create a substantial connection with the forum state." *Picot*, 780 F.3d at 1213 (quotations and citations omitted). Because the defendant's presence in the forum "had no special place in his performance under the agreement as a whole," his presence in the forum was not sufficient. *Picot*, 780 F.3d at 1213. For the business in question, the defendant also traveled elsewhere for presentations, utilized the internet to communicate across borders, and the "bulk of his efforts in developing and marketing the technology were centered in Michigan" where the business offices were located. *Picot*, 780 F.3d at 1213.

The facts before this Court are similar to those in *Picot*. The prior negotiations among Campbell and Sciara took place largely in Arizona, contemplated future consequences were contemplated to be in Arizona, terms benefiting Sciara to be performed by Campbell were conducted in Arizona, and the course of dealing is in Arizona. Thus, specific personal jurisdiction over Campbell in Nevada is lacking.

***1. Prior Negotiations -- Arizona***

Prior negotiations concerning any alleged contract were held in Phoenix, Arizona. Campbell Decl., ¶¶ 7, 11, 13-15. First, in 2014 Sciara traveled to Phoenix, Arizona to meet with Campbell and to propose either selling his Cap Fund Financial business to Campbell and Kinsler or to join in a business venture with Campbell and Kinsler. Campbell Decl., ¶ 7. While Sciara was in Phoenix, the parties discussed potential ownership in a new venture "Sprout Financial," including a 20% interest for Mr. Sciara, profit sharing plans, revenue sharing plans, and other terms but no agreement ever materialized. Campbell Decl., ¶¶ 7-8.

Then, in 2016 Sciara initiated a call to Campbell in Phoenix, Arizona to discuss going into business together. Campbell Decl., ¶ 11. At that time Sciara suggested merging CapFund



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Financial with Sprout Financial. *Id.* Terms were discussed, but not agreed to. *Id.* Campbell told Sciara that Sprout Financial had to be separated from MiCamp and Mr. Kinsler before they can agree to own Sprout Financial together. *Id.*

Finally on April 27, 2018, Sciara traveled to Phoenix, Arizona to discuss owning Sprout Financial with Campbell. Campbell Decl., ¶ 13. Terms were discussed while Sciara and Campbell were playing golf in Phoenix, and Sciara again rejected the terms of doing business together. *Id.* ¶¶ 14-15.

All of the substantive negotiations regarding Sciara and Campbell going into business together took place in Arizona, not Nevada.

### *2. Contemplated Future Consequences -- Arizona*

The contemplated future consequences of the alleged agreements among Sciara and Campbell are apparently the operation of the Sprout Financial business, which has its principal place of business in Phoenix, Arizona. The Complaint does not allege that any performance of a putative contract among Sciara and Campbell required Campbell to do anything in Nevada. *See IPS Shared Tech. Servs. v. Overwatch Sys., LTD*, 2014 U.S. Dist. LEXIS 69878, *9-10 (N.D. Cal. 2014) (sending payments to the forum is insufficient to support specific personal jurisdiction), citing *Freudensprung v. Offshore Tech. Svcs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (stating that "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract . . . are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant"); *Sarkis v. Lajcak*, 2009 U.S. Dist. LEXIS 95971, 2009 WL 3367069, at *4 (N.D. Cal. Oct. 15, 2009) (stating that "[s]ending payments to California when the material and essentially all of the performance of the contract was in Bosnia is not sufficient to justify the exercise of personal jurisdiction in California").

As noted, Sprout Financial's offices were at 6930 E. Chauncey Lane, Phoenix, Arizona 85054 from 2014-2017 and in 2017 moved to 5415 E High Street, Phoenix, AZ 85054. Nearly forty (40) employees work for Sprout Financial at the 5415 E High Street office location. Campbell Decl., ¶ 17. Sprout Financial currently has only one part-time employee in Nevada



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

(Mr. Shawn Kinney) who provides consulting services to Sprout Financial's operations and sales department, and travels to Phoenix, Arizona 50% of the time to perform his job. *Id*.

That approximately 1% of the customers for Sprout Financial are in Nevada and one part time employee resides in Nevada and travels to Arizona as a necessary component of his part-time work for Sprout Financial, are not facts of significance sufficient to support specific personal jurisdiction. *Bristol-Myers Squibb Co*., 137 S.Ct. at 1780; *Picot*, 780 F.3d at 1213.

***3. Terms of the Contract -- Arizona***

Terms of an agreement for ownership in any venture were never agreed to. Nonetheless, Sciara – wrongly – contends that he contributed assets to Sprout Financial operating out of Phoenix, Arizona, ECF No. 1, ¶ 15, and that he was to receive money, ECF No. 1, ¶ 16. The terms of the purported agreement merely suggest Sciara was to receive money. There is nothing that is alleged in the Complaint that required Campbell to do anything in the State of Nevada. There are no facts alleged that the terms of any purported contract would be performed in Nevada. Rather, Sciara would receive (or not) money regardless of wherever he was located.

***4. Course of Dealing -- Arizona***

Sciara claims to have provided assets to the business operating out of Arizona. ECF No. 1, ¶ 15. Sprout Financial conducts business out of Arizona. Campbell Decl., ¶¶ 17, 21. Sciara traveled to Arizona to discuss the potential for becoming an owner of Sprout Financial. Campbell Decl., ¶¶ 7, 11, 13. It is clear that the course of dealing among the parties is that Arizona is the essential forum for Sprout Financial and any putative agreement among Messrs. Campbell and Sciara.

***5. Plaintiff's Claims Do Not Arise out of or Result from Forum-Related Activities***

The Ninth Circuit has established a but for test to determine if the claims asserted arise out of or result from the defendant's forum related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Even assuming, *arguendo*, that Campbell did purposefully avail himself of Nevada law or purposefully direct his actions at Nevada, the alleged injuries do not arise out of his contact with Nevada. *See Three Rivers Provider Network, Inc. v. Medical Cost Containment*



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

*Professionals, LLC*, 2018 U.S. Dist. LEXIS 126618, *13-14, 2018 WL 3620491 (D. Nev. July 30, 2018). The negotiations regarding whether to do business together, which never resulted in a contract among the parties, took place in Arizona. Campbell Decl. ¶¶ 7, 11, 13.

The putative causes of action sounding in contract did not require Campbell to discharge his duties under the contract in Nevada, and like in *Picot*, specific personal jurisdiction is lacking. *Picot*, 780 F.3d at 1212-13.

**D. Specific Personal Jurisdiction -- Tort**

For tort claims, the Ninth Circuit applies an "effects" or "purposeful direction" test and looks "to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1212, citing *Schwarzenegger*, 374 F.3d at 802-03. A "defendant purposefully directed his activities at the forum if he '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot*, 780 F.3d at 1213-14, *quoting Schwarzenegger*, 374 F.3d at 803. The "focus is on whether each individual defendant's suit-related conduct forms a connection with the forum itself, so the mere fact of a 'relationship with a {resident} plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *In re Nexus 6P Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 23622, *10, 2018 WL 827958 (N.D. Cal. 2018), *quoting Walden*, 134 S. Ct. at 1123.

In this case, Plaintiff's tort claims are based upon an unspecified confidential relationship and an alleged agreed-to business arrangement. ECF No. 1, ¶¶ 38, 43. Plaintiff alleges that "A confidential relationship existed between Campbell and Sciara. Campbell breached the partners' confidential relationship by denying Sciara access to Sprout Financial and its subsidiaries assets, information, and business processes." ECF No. 1, ¶ 38. Plaintiff also alleges that "Campbell breached his fiduciary duty to Sciara by locking him out of all access to Sprout Financial and its subsidiaries' assets, technology, banking, credit cards, office, etc." ECF No. 1, ¶ 44. These allegations are not sufficient to meet the requisite test.

***1. Intentional Act***

The intentional act element is satisfied by a defendant who acts with the "intent to perform



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. This element is satisfied by Campbell speaking with Sciara.

***2. Expressly aimed at the forum state***

This element requires an investigation into whether the allegedly tortious actions were "expressly aimed at the forum," rather than at the plaintiff. *Picot*, 780 F.3d at 1214, quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010); *Walden*, 134 S.Ct. at 1122 ("plaintiff cannot be the only link between the defendant and the forum"). This inquiry "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Picot*, 780 F.3d at 1215, quoting *Schwarzenegger*, 374 F.3d at 807.

The Supreme Court has been clear that the claims "must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co.*,137 S.Ct. at 1780, *quoting Daimler DA*, 571 U.S. at 127. There "must be an affiliation between the forum and the underlying controversy." *Id.* (citations and quotations omitted). Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*, *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

In *Bristol-Myers Squibb Co.*, the Supreme Court held specific personal jurisdiction was lacking over Bristol-Myers Squibb in California for the claims made by plaintiffs who were not prescribed, did not purchase, and did not consume the defendant's drug within the state of California because no acts related to the tort asserted took place in California. *Id.* at 1777-78. Bristol-Myers Squibb, Co. was domiciled in Delaware due to having incorporated there, and has its headquarters in New York. *Id.* at 1778. The non-tort related activities of the defendant in California were irrelevant: that Bristol-Myers Squibb, Co. did engage in business in California, having five research laboratory facilities, employing over 160 employees, having about 250 sales representatives, and maintaining a state lobbying/advocacy office in California, did not matter. *Id.* All Bristol-Myers Squibb, Co.'s activities regarding the manufacture and development of Plavix did not occur in California, but it had sold over 187 million Plavix pills in California between 2006 and 2012. *Id.* This is approximately 1% of the company's nationwide sales



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

revenue. *Id*.

The United States Supreme Court was clear that it is only the specific tort related conduct alleged by the plaintiff that must be examined. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims" against the nonresident defendant. *Id*. at 1781.

Here, the alleged tortious actions are "denying Sciara access to Sprout Financial and its subsidiaries' assets, information, and business processes," ECF No. 1, ¶ 38, and "locking [Sciara] out of all access to Sprout Financial and its subsidiaries' assets, technology, banking, credit cards, office, etc.," ECF No. 1, ¶ 44.

Campbell is domiciled in Arizona. ECF No. 1, at ¶ 3. As noted, Sprout Financial's offices and employees are located in Phoenix, Arizona. . Campbell Decl., ¶¶ 17, 21. Such tortiuous actions took place, if at all, at the principal place of business of Sprout Financial, which is in Phoenix, Arizona.

***3. Causing Harm likely to be suffered in the forum state***

For his tort claims, Sciara seeks monetary damages and a constructive trust. ECF No. 1, ¶¶ 40-41, 45. Plaintiff's alleged financial injury is, like in *Walden* and *Picot*, "entirely personal to him and would follow him wherever he might choose to live or travel." *Picot*, 780 F.3d at 1215.

Where Plaintiff contends that he must have a remedy in the form of a constructive trust (ECF No. 1, ¶ 40) in or ownership of a business situated in Phoenix, Arizona, or its assets, these remedies are not connected to the State of Nevada. Rather, they are only connected to the State of Arizona because that is where Sprout Financial is located. Campbell Decl., ¶¶ 17, 21. The conclusion is that there is no specific personal jurisdiction over Campbell.

***4. Plaintiff's Claims Do Not Arise out of or Result from Forum-Related Activities***

Plaintiff's alleged tort is that Campbell denied Sciara access to the Sprout business and its assets. ECF No. 1, ¶ 38, 44. The principal place of the Sprout business is Phoenix, Arizona, not

BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Nevada. Campbell Decl., ¶¶ 17, 21. Sciara's claim of financial injury for not being able to access the businesses or assets is not an injury that is specific to a particular forum because Sciara would be claiming a financial injury no matter where he is located. *Picot*, 780 F.3d at 1215.

Again, even assuming, *arguendo*, that Campbell did purposefully avail himself of Nevada law or purposefully direct his actions at Nevada, the alleged tortious conduct and injuries allegedly arising therefrom do not arise out of any contact with Nevada. *See Three Rivers Provider Network, Inc.*, 2018 U.S. Dist. LEXIS 126618, *13-14, 2018 WL 3620491.

**E. Reasonableness**

If the plaintiff satisfies its burden on the first two prongs, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource, Inc.*, 653 F.3d at 1079 (quoting *Burger King Corp*, 471 U.S. at 477-78). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the court must consider seven factors under Ninth Circuit case law:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource*, 653 F.3d at 1079 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

**1. Purposeful Injection**

Sciara's contentions revolve around a desire to profit from the business of Sprout Financial. That business, regardless of whether Sciara is an owner thereof or not, has its principal place of business in the State of Arizona. As noted, Sprout Financial's offices and employees are located in Phoenix, Arizona. Campbell Decl., ¶ 17. Although the business has customers in Nevada and one part time employee in Nevada who is required to be in Phoenix, Arizona for much of his work, such facts related to Nevada are merely attenuated. Campbell Decl., ¶ 18. The

business has customers all over the country. *Id.* The business in Nevada only accounts for less than 1% of its total business. *Id.*

This factor weighs against exercising jurisdiction in Nevada.

**2. Burden on Defendants**

The burden on the defendant to litigate in Nevada is significant. Campbell resides in Arizona. The records and resources related to the business of Sprout Financial are all located in Phoenix, Arizona. The employees who will be witnesses are located in Phoenix, Arizona. Campbell Decl., ¶ 17.

This factor weighs against exercising jurisdiction in Nevada.

**3. Conflict with the Sovereignty of Defendant's State**

This factor is neutral.

**4. Nevada's Interest**

Nevada has an interest in adjudicating matters that concern its own residents, Plaintiff in this instance, and Nevada residents would find it more convenient to litigate in their own forum. However, Nevada does not have an interest in an individual and a business wholly situated in Arizona. This factor weighs against exercising jurisdiction.

**5. Efficient Resolution**

The courts in Arizona would be more efficient for resolution of the litigation because the witnesses and records are largely in Arizona, including Campbell and the employees of Sprout Financial. They can be compelled personally to attend hearings and trial in Arizona, but not Nevada. Additionally, the principal place of business of Sprout Financial is in Arizona.

This factor weighs against exercising jurisdiction.

**6. Convenience to Plaintiff**

Although Plaintiff resides in Las Vegas, Nevada, the records and business of Sprout Financial are located in Arizona. Even if the case proceeds in Nevada, those witnesses would have to be deposed in Arizona.

Therefore, although a trial and hearings in Nevada may be convenient to plaintiff, since all of the witnesses are in Arizona, and compelling their attendance at trial could be accomplished in

BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

Arizona and not Nevada, this factor weighs against exercising jurisdiction.

**7. Alternative Forum**

The State of Arizona is a proper forum for the dispute among Sciara and Campbell. This factor weighs against exercising jurisdiction.

**8. Balancing the Reasonableness Factors**

In balancing the reasonableness factors, the scale tips towards not exercising jurisdiction as doing so would be unreasonable.

## IV. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

If the Court does not dismiss the Complaint for lack of personal jurisdiction, then it should rule that the Complaint fails to state a claim in several respects.

Rule 12(b)(6) provides in pertinent part: "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion … (6) failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Aziz v. Eldorado Resorts, LLC*, 72 F. Supp. 3d 1143, 1147 (D. Nev. 2014) (granting motion to dismiss), *citing Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Dismissal is warranted pursuant to Rule 12(b)(6) when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Hampton v. Nustar Management Fin. Group*, 2007 WL 119146, *1 (D. Nev. 2007) (motion to dismiss counterclaim granted), *quoting Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The Court must accept all material allegations in the Complaint as true as well as all reasonable inferences that may be drawn from such allegations. *Hampton*, 2007 WL 119146, *1, *citing LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000). The Court also construes allegations contained in a complaint in the light most favorable to the nonmoving party. Hampton, 2007 WL 119146, *1, *citing Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). But, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do…. Nor does a complaint suffice if it tenders 'naked assertion{s}' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555, 557.

Courts must apply a two-pronged approach. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *Iqbal,* 556 U.S. at 678-79, such as "legal conclusions, bare assertions, or merely conclusory allegations." *Burd v. Bank of N.W. Mellon*, 2013 U.S. Dist. LEXIS 83322 * 3, 2013 WL 2896977 (D. Nev. 2013). Second, attention turns to whether the genuine factual allegations plausibly suggest an entitlement to relief, i.e. those facts lead "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burd*, 2013 U.S. Dist. LEXIS 83322 *3, *quoting Iqbal*, 556 U.S. at 678.

Conclusions are insufficient to support a complaint under *Twombly/Iqbal*. *Iqbal*, 556 U.S. at 679-80. In *Twombly*, a complaint plainly asserting defendant "entered into a contract, combination or conspiracy to prevent competitive entry … and ha[d] agreed not to complete with one another," *Twombly*, 550 U.S. at 551, was conclusory and therefore not entitled to the assumption of truth. *Id*., at 555.

Rule 9(b) of the Federal Rules of Civil Procedure provides that claims of fraud must be alleged "with particularity." The allegations must set forth the "who, what, when, where, and how of the misconduct charged" and be specific enough so that a part can defend itself. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations and quotation marks omitted).

**A. Attorney Fees**

Plaintiff's claim that he "is entitled to recover his attorney's fees as special damages," ECF No. 1, at 10/22-/23, is not supported by any facts plead in the Complaint. Special damages must be specifically plead pursuant to Rule 9(g), Federal Rules of Civil Procedure. "Absent an agreement between the parties, attorneys' fees may not be awarded unless by statute or rule." *Von Ehrensmann v. Lee*, 98 Nev. 335, 337, 647 P.2d 377, 378 (1982). "When attorney fees are



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

alleged as damages, they must be specially pleaded and proven by competent evidence at trial, just as any other element of damages." *Sandy Valley Associates v. Sky Ranch Estates Owners Association*, 117 Nev. 948, 958-959, 35 P.3d 964, 971 (2001). Failure specially to plead a basis to recover attorney's fees and failure to plead specifically the fees sought is fatally deficient.

The claim for attorney's fees as special damages therefore fails to state a claim upon which relief can be granted and must be dismissed.

**B. Dissolution**

Plaintiff's second claim for relief is merely a prayer for dissolution. ECF No. 1, ¶¶ 29-36. Dissolution is a remedy, not a claim for relief. *Winer v. Strickland*, 2017 U.S. Dist. LEXIS 184960, n.50 at *9, 2017 WL 5180426, n.50 (D. Nev. 2017). Therefore, the second claim for relief fails to state a claim upon which relief can be granted and must therefore be dismissed.

**C. Confidential Relationship**

Plaintiff's third cause of action, ECF No. 1, ¶ 37-40, is purportedly based upon a confidential relationship existing among Sciara and Campbell and is seeking a constructive trust "over all assets controlled by Campbell in favor of Sciara essential to the effectuation of justice." ECF No. 1, ¶ 40.

A claim for breach of a confidential relationship is a cause of action for constructive fraud. *Frudden v. Pilling*, 842 F.Supp.2d 1265, 1281 (D. Nev. 2012) (citing *Perry v. Jordan*, 111 Nev. 943, 947, 900 P.2d 335, 337-38 (1995)), *reversed and remanded on other grounds Frudden v. Pilling*, 742 F.3d 1199 (9th Cir. 2014). Constructive fraud is "the breach of some legal or equitable duty which, irrespective or moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence," and is "characterized by a breach of duty arising out of a fiduciary or confidential relationship." *U-Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd.*, 2011 U.S. Dist. LEXIS 72157, *20, 2011 WL 2632667 (D. Nev. 2011), (quoting *Perry*, 900 P.2d at 337). A "confidential relationship may arise by reason of kinship or professional, business, or social relationships between the parties." *Perry v. Jordan*, 111 Nev. at 947, 900 P.2d at 337-338 (1995), citing *in re Guardianship of Chandos*, 504 P.2d 524, 526 (Ariz. Ct. App. 1972). The existence of such a relationship requires that "one party gains the confidence



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

of the other **and** purports to act or advise with the other's interests in mind." *Perry*, 111 Nev. at 947, 900 P.2d at 338, (quoting *Kudokas v. Balkus*, 103 Cal. Rptr. 318, 321 (Cal. Ct. App. 1972)) (emphasis added); *see also*, *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982) (no fiduciary relationship among buyer and seller of property, buyer "reposed no special confidence" in the seller).

"Nevada courts require plaintiffs to plead constructive fraud with Rule 9(b) particularity." *U-Haul Co. of Nev., Inc.*, 2011 U.S. Dist. LEXIS 72157, *20. Thus, the plaintiff is required to plead the "who, what, when, where, and how" of the conduct alleged to comprise of the constructive fraud (breach of confidential relationship). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff has failed to plead specific facts which support a claim of constructive fraud or confidential relationship. *Cf. Perry*, 111 Nev. at 947, 900 P.2d at 338. The conclusory allegations contained in paragraph 38 of the Complaint are insufficient to state a cause of action. *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555, 557; ECF No. 1, ¶ 38 ("A confidential relationship existed between Campbell and Sciara.").

The third claim for relief for constructive fraud (breach of confidential relationship) fails to state a claim upon which relief can be granted and thus must be dismissed.

## V. CONCLUSION

The Complaint must be dismissed because this Court lacks personal jurisdiction over Defendant Stephen Campbell. Alternatively, the claim for attorney's fees and the second and third claims for relief should be dismissed for failure to state a claim upon which relief can be granted.

Dated: October 3, 2018

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ *Arthur A. Zorio*

Michael. D. Rounds, Esq.
Arthur A. Zorio, Esq.
5371 Kietzke Lane
Reno, NV 89511
Email: mrounds@bhfs.com
azorio@bhfs.com



BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

BROWNSTEIN HYATT FARBER SCHRECK, LLP
5371 Kietzke Lane
Reno, NV 89511
775.324.4100

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and on this 3rd day of October, 2018 I served the document entitled, **DEFENDANT STEPHEN CAMPBELL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF No. 1]**, on counsel of record through the CM/ECF system.

*/s/ Jeff Tillison*
Employee of Brownstein Hyatt Farber Schreck, LLP