ANTHONY P. SGRO, ESQ.
Nevada State Bar No. 3811
**JENNIFER WILLIS ARLEDGE, ESQ.**
Nevada Bar No. 8729
**SGRO & ROGER**
720 South 7th Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
tsgro@sgroandroger.com
jarledge@sgroandroger.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN SCIARA, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN CAMPBELL, <br><br> Defendant. | Case No.: 2:18-cv-01700-RFB-CWH <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE PROTECTIVE ORDER** |

Plaintiff Brian Sciara, by and through undersigned counsel, hereby submits his opposition to Defendant Stephen Campbell's Motion for Order to Show Cause Why Plaintiff Should Not Be Held in Contempt.

### PRELIMINARY STATEMENT

Defendant's motion seeks an order to show cause why Plaintiff should not be held in contempt of court for an alleged willful violation of the Protective Order that was entered in this matter. [ECF No. 22]. Defendant's motion further seeks an order allowing limited discovery "to ascertain the full extent" of the disclosure, and the imposition of sanctions to "punish and deter" Plaintiff from further violations of the Court's order.

Plaintiff should not be held in contempt of court because the conduct referred to by Defendant as an alleged "violation" of the Protective Order was an accidental, inadvertent

-1-

mistake caused by Plaintiff's lack of knowledge of the protective order, not a willful violation. Moreover, Plaintiff has taken affirmative steps to rectify the disclosure of the information by sending correspondence to counsel for the one third-party entity that received the information directing it to immediately delete and destroy the information.

## I. STATEMENT OF FACTS

Defendant Stephen Campbell (hereinafter "Defendant" or "Campbell") alleges that Plaintiff Brian Sciara (hereinafter "Plaintiff" or "Sciara") "willfully violated the Protective Order by disclosing [Defendant's] financial confidential records for his Company, MiCamp, to an unrelated third party." [ECF No. 59 at 3: 10-12]. The disclosed documents at issue in Defendant's Motion for Order to Show Cause are seven (7) pages of MiCamp Solutions, LLC's partial bank statements, from 2014, 2018, and 2019.

The circumstances surrounding the disclosure of MiCamp Solutions, LLC's partial bank statements are as follows:

1. Plaintiff was previously represented in this matter by McDonald Carano LLP.

2. On January 25, 2021, undersigned counsel substituted in as counsel to represent Plaintiff in the instant proceedings.

3. Undersigned counsel also represents Plaintiff in Case No. A-20-824100-B, which is pending in the Eighth Judicial District Court for the State of Nevada.

4. In the Summer/Fall of 2020, McDonald Carano LLP provided Plaintiff with documents from the instant case to provide to undersigned counsel in order to assist in the investigation of Plaintiff's claims in Case No. A-20-824100-B.

5. Plaintiff was not aware that some of the documents provided to him by his former counsel were subject to a Protective Order in the instant case. (*See* Declaration of Brian Sciara, attached hereto as Exhibit "1").

6. In Case No. A-20-824100-B, Plaintiff generally alleges that MiCamp Solutions, LLC misappropriated Plaintiff's business's identity in order to fraudulently open merchant accounts with various payment processors.

7. While reviewing documents produced in the instant case, Plaintiff learned that

two of the named Defendants in Case No. A-20-824100-B (one of which is MiCamp Solutions, LLC and one of which is Fiserv Inc.), appeared to have the same individual on their respective payrolls, supporting Plaintiff's claim that the Defendants conspired with each other to open fraudulent merchant accounts.

8. Plaintiff provided undersigned counsel with MiCamp Solutions, LLC's bank statements.

9. Undersigned counsel was not made aware that the bank statements were subject to a Protective Order in the instant case. (*See* Declaration of Alanna Bondy, Esq., attached hereto as Exhibit "2").

10. In preliminary settlement discussions with Fiserv Inc., undersigned counsel provided seven (7) pages of MiCamp Solutions, LLC's bank statements to counsel for Fiserv Inc., via a series of emails dated September 10, 2020, September 14, 2020, and September 21, 2020.

11. These emails were part of confidential settlement negotiations in Case No. A-20-824100-B. The partial bank statements were not publicly disclosed.

12. Upon information and belief, Campbell learned of the disclosure from counsel for Fiserv Inc.

13. Upon information and belief, these bank statements would be discoverable to all parties, including Fiserv Inc., in Case No. A-20-824100-B, under Nev. R. Civ. P. 26.

14. Upon information and belief, MiCamp Solutions, LLC (a non-party in this litigation), never requested the protection of the Protective Order with respect to the disclosed bank statements, pursuant to Section 13 of the Protective Order.

15. Upon information and belief, after learning of the alleged violation of the Protective Order, Defendant failed to inform Plaintiff, Plaintiff's former counsel, or Plaintiff's current counsel of the unauthorized possession of MiCamp Solutions, LLC's partial bank statements, pursuant to Section 14 of the Protective Order.

16. On February 3, 2021, Alanna Bondy, Esq., of Sgro & Roger, sent a letter to counsel for Fiserv Inc., alerting Fiserv Inc. of the unauthorized disclosure and directing Fiserv

to return and/or destroy the partial bank statements. (See Exhibit "3").

## II. LEGAL ANALYSIS

### A. LEGAL STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure authorizes district courts to impose a wide range of sanctions, including contempt, on a party that fails to comply with a protective order. *See* Fed. R. Civ. P. 37(b)(2)(A)(vii); *see also Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993) (citing support for the proposition that Rule 37(b)(2) should provide for enforcement of joint protective orders); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986) (upholding a Rule 37(b) sanction for a party's violation of the protective order). Civil contempt sanctions are among those imposed against individuals who violate protective orders. *See* 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.108[2], at 26-569 (3d ed. 2018). Civil contempt is characterized by the court's desire to compel obedience to a court order, or to compensate the contemnor's adversary for the injuries which result from the noncompliance. Thus, there are two forms of civil contempt: compensatory and coercive. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F. 2d 770, 983 U. S. App. LEXIS 29352 (9th Cir. 1983).

A contempt adjudication is civil in nature when the sanction imposed is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. *McCrone v. United States*, 307 U.S. 61, 64, 83 L.Ed. 1108, 59 S. Ct. 685 (1939). A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order. *Falstaff* at 778. "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual—Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). Therefore, a court may impose a civil contempt sanction only if there is clear and convincing evidence that "(1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis (substantial compliance is not punishable as contempt), and (3) the contemnor's

conduct was not the product of a good faith or reasonable interpretation of the violated order." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[7][b], at 37-110 (footnotes omitted); *see also United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (same)." "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[7][b], at 37-110 (footnote omitted). *SolarCity Corp. v. Doria,* No. 16cv3085-JAH (RBB), 2018 U.S. Dist. LEXIS 150364, at *24-25 (S.D. Cal. Sep. 4, 2018).

On the other hand, where a judgment of contempt contains a mixture of criminal and civil elements, "the criminal aspect of the order fixes its character for purposes of procedure on review." *Penfield Co. of California v. Securities & Exchange* Commission, 330 U.S. 585, 591, 91 L. Ed. 1117, 67 S. Ct. 918 (1947). In criminal contempt, willful disobedience must be proved beyond a reasonable doubt. *United States v. Powers*, 629 F.2d 619, 626, n.6, 627 (10th Cir. 1980). Willfulness in this context means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order. *Falstaff* at 782. Due process mandates that the court refrain from imposing harsh sanctions, such as dismissal or its equivalence, for a discovery violation except when the violation is predicated upon willfulness, bad faith, or fault of petitioner rather than inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Rwy.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

B. **ANALYSIS**

1. **Defendant lacks standing to bring the instant motion.**

As an initial matter, the financial records that were allegedly disclosed by Plaintiff are not the property of the Defendant. Rather, the partial bank statements that the Defendant is alleging were disseminated in violation of the Protective Order, are the property of MiCamp Solutions, LLC. MiCamp Solutions, LLC is not a party to this litigation. The documents in question appear to have been produced as part of an expert disclosure made by the Defendant. Upon information and belief, MiCamp Solutions, LLC, never requested the protection of the Protective Order with respect to the disclosed bank statements.

### 2. The alleged disclosure was an accidental, inadvertent mistake.

Defendant alleges that Plaintiff, through counsel, violated the Protective Order by providing copies of pages from bank statements to a third-party. In support, Defendant has attached to his motion copies of the bank statements at issue along with the email correspondence transmitting said bank statements. Defendant incorrectly surmises that production of the bank statements to a third-party was "willful" and with the intent to interfere with Defendant's business relationship with the third-party without the slightest support for this assertion. Notably, Plaintiff's Motion is not verified nor supported by a sworn affidavit or declaration of the Defendant. As will be set forth below, the disclosure of the bank statements subject to the Protective Order was inadvertent, a mistake and not willful.

As is evident from the emails that accompanied the bank statements, Plaintiff was engaged in discussions with counsel for the third-party (Fiserv) in response to a settlement demand Plaintiff served on Fiserv related to claims against Fiserv and others that they allowed MiCamp to open merchant accounts with Fiserv knowing that the company opening the accounts was using Plaintiff's or his company's identifying information. Part of the basis for those claims is the belief that a Fiserv employee was being paid by MiCamp for his/her involvement in that fraud. As part of those settlement discussions, Fiserv requested proof that the Fiserv employee was acting in a dual role and had received payment from MiCamp. Plaintiff had seen bank statements of MiCamp produced in discovery in this case that seemed to confirm this belief. He provided pages from those bank statements, along with a screenshot of one page and a text message to counsel.

At no time did Plaintiff realize that the bank statements at issue were subject to a protective order. (Exhibit "1"). In fact, Plaintiff was not aware that a "protective order" existed in the case. (Exhibit "1"). By the same token, undersigned counsel for Plaintiff was unaware of a protective order in this case since Plaintiff was represented by different attorneys at a different law firm. (Exhibit "2"). Only recently, on January 25, 2021, undersigned counsel appeared for the first time as counsel for Plaintiff in this case. Further, Plaintiff had no reason to believe that he could not share documents and information gleaned from this matter

with the attorneys representing him in a separate matter. In fact, the Protective Order allows the parties to disclose Confidential Information to their counsel.

Section 10 [sic] provides:

**Persons Authorized to Receive Confidential Information.** Confidential Information produced pursuant to this Protective Order may be disclosed or made available only to the Court, court personnel, and to the persons below:

(a) A *party*, or officers, directors, and employees of a party deemed necessary by counsel to aid in the prosecution, defense, or settlement of this action;

(b) *Counsel for a party* and its affiliates (including in-house attorneys, *outside attorneys*, and paralegal, clerical, litigation support staff, and secretarial staff employed by such counsel);

. . .

Any person to whom Confidential Information is disclosed pursuant to subparts (a), (b), ... above shall be advised that the Confidential Information is being disclosed pursuant to an order of the Court, that the information may not be disclosed by such person to any person not permitted to have access to the Confidential Information pursuant to this Protective Order, and that any violation of this Protective Order may result in the imposition of such sanctions as the Court deems proper.

### 3. Defendant has suffered no harm.

The bank statements at issue were not those of Defendant. The bank statements belong to MiCamp Solutions. MiCamp Solutions has not filed a motion to intervene in these proceedings and has not brought the instant motion.

More importantly, the bank statements are relevant to issues raised by the State Court case brought by Plaintiff against MiCamp Solutions and others, including Fiserv, the third-party recipient of the bank statements. The allegations in the State Court action include that MiCamp and Fiserv were knowingly involved in activities that allowed MiCamp to open merchant accounts with Fiserv using Plaintiff's business identity. It is alleged that an employee of Fiserv was also being paid as an employee by MiCamp. Proof of that relationship is demonstrated on MiCamp's bank statements. The bank statements at issue would be discoverable to Fiserv in that case.

### 4. Limited discovery on the extent of disclosure is not appropriate.

Defendant's request for an order allowing limited discovery and an evidentiary hearing "to ascertain the full extent" of the violation of the Protective Order is not warranted or necessary in this case. Plaintiff, through his counsel, has provided a declaration confirming, under penalty of perjury, that apart from the seven (7) pages of MiCamp Solutions, LLC's partial bank statements, no other documents that are subject to the Protective Order in this matter have been disclosed to any third-party. (See Exhibit "3" ¶ 9).

Additionally, Defendant failed to comply with the procedures outlined in Section 14 of the Protective Order when it learned of the alleged unauthorized disclosure of MiCamp Holdings, LLC's partial bank statements. Section 14 of the Protective Order explicitly provides that a party that learns of the unauthorized disclosure of any information protected by the Protective Order **shall** "immediately notify in writing the other parties." [ECF No. 22, ¶ 14]. Thereafter, "the parties shall work cooperatively to prevent its recurrence." *Id.* However, instead of following the procedures outlined in Section 14 to try to minimize the potential harm caused by Plaintiff's alleged violation of the Protective Order, and instead of approaching Plaintiff's counsel to ascertain the full extent of the alleged violation, Defendant proceeded to file a *Motion for Order to Show Cause* seeking sanctions, up to and including case terminating sanctions.

Defendant's failure to comply with the procedures outlined in Section 14 of the Protective Order should preclude the Defendant from attempting to engage in an extended and unnecessary search for other alleged violations of the Protective Order. Defendant has presented no credible evidence to show that he has any reason to believe that additional protected materials were disclosed to third-parties. Instead, it appears that Defendant is attempting to use a frankly very minor and inadvertent mistake to engage in costly discovery and further proceedings to drive up the cost of litigation for the Plaintiff.

### 5. Monetary sanctions and/or the award of attorneys' fee is not warranted.

Defendant seeks an award of sanctions and/or attorneys' fees from Plaintiff for the alleged violation of the Protective Order. That request presupposes that the Court will find

Plaintiff willfully violated the Protective Order which he did not. However, if the Court reaches the issues of the imposition of sanctions, it is important to consider that Defendant needless incurred attorney's fees and costs associated with bringing the instant motion because the procedure for addressing a potential violation of the Protective Order is set forth in the Protective Order itself. Section 14 provides:

> **Knowledge of Unauthorized Use or Possession.** If any party learns of any unauthorized possession, knowledge, use or disclosure of any Confidential Information or Highly Confidential Information, the party shall immediately notify in writing the other parties. The party learning of such unauthorized possession, knowledge, use or disclosure shall promptly furnish the other parties with the full details of such possession, knowledge, use or disclosure. With respect to such unauthorized possession, knowledge, use or disclosure the parties shall work cooperatively to prevent its recurrence.

Defendant did not follow the measures set forth in Section 14, and instead chose to file the instant motion. Receipt of a copy of the filed Motion was the first instance Plaintiff or Plaintiff's current counsel learned that Defendant believed there was a violation of the Protective Order. Upon information and belief, Defendant did not contact prior counsel who was representing Plaintiff in this case at that time, either. The purpose of Paragraph 14 of the Protective Order is to afford the parties, including the alleged breaching party, an opportunity to analyze and discuss what occurred and to develop a means to prevent any potential unauthorized disclosure in the future. Plaintiff was denied the opportunity to remedy the situation. Defendant's failure to notify Plaintiff or Plaintiff's counsel of the alleged violation by filing the instant motion, caused Defendant to incur unnecessary and avoidable attorneys' fees and costs. Defendant should not be rewarded for his conduct.

### 6. Evidentiary sanctions and dismissal are improper.

Courts should use dismissal of an action with prejudice or its equivalent as "a weapon of last, rather than first, resort." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Such harsh sanctions are usually appropriate only when a lesser sanction does not serve the interests of justice. *Gocolay v. New Mex. Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992). There are five (5) factors the court must consider to determine if good cause exists to dismiss a case. The factors include: (1) the degree of actual prejudice to the defendant, (2)

the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions. *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993).

Applying the five (5) factors to the instant case: (1) Defendant has offered no evidence of actual prejudice. There are but mere assertions of harm in the Motion. (2) The alleged disclosure has not interfered with the judicial process. It has not created any delay in these proceedings. (3) Plaintiff's actions were inadvertent and unintentional. (4) Plaintiff has not been warned by the Court in advance that the action would be dismissed for noncompliance. (5) If any sanctions are awarded, there is no reason to believe that they would be insufficient to obtain the desired result. Based on the foregoing, dismissal would be inappropriate.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied its entirety.

Dated this 3rd day of February, 2021.

Respectfully submitted,
SGRO & ROGER

*/s/ Jennifer W. Arledge*
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
JENNIFER WILLIS ARLEDGE, ESQ.
Nevada Bar No. 8729
720 S. Seventh Street, Third Floor
Las Vegas, NV 89101
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
tsgro@sgroandroger.com
jarledge@sgroandroger.com
*Attorneys for Plaintiff Brian Sciara*

## CERTIFICATE OF SERVICE

Purusant to Fed. R. Civ. P. 5(b), I hereby certify that the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE PROTECTIVE ORDER was submitted electronically for filing and/or service on the 3rd day of February, 2021.

| | |
|---|---|
| **Bryce K. Kunimoto, Esq.**<br>Nevada Bar No. 007781<br>**HOLLAND & HART LLP**<br>9555 Hillwood Drive 2nd Flr<br>Las Vegas, NV 89134<br>Email: bkunimoto@hollandhart.com<br>Phone: (702) 669-4600<br>Fax: (702) 669-4650 | |

BY _____
An Employee of Sgro & Roger

-11-