Bryce K. Kunimoto, Esq.
Nevada Bar No. 7781
Robert J. Cassity, Esq.
Nevada Bar No. 9779
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2603
Fax: (702) 669-4650
bkunimoto@hollandhart.com
bcassity@hollandhart.com

Melissa Y. Lou, Esq. (*pro hac vice*)
Colorado Bar No. 53145
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000
Fax:  (720) 763-9640
mylou@hollandhart.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BRIAN SCIARA,<br><br>             Plaintiff,<br><br>v.<br><br>STEPHEN CAMPBELL,<br><br>             Defendant. | CASE NO.:  2:18-cv-01700-DJA<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE PROTECTIVE ORDER** |

Defendant Stephen Campbell, by and through his attorneys of record, Holland & Hart LLP, hereby submits this reply in support of his Motion for Order to Show Cause Why Plaintiff Should Not Be Held In Contempt Of Court For Violating The Protective Order [ECF No. 59].

DATED this 10th day of February, 2021.

HOLLAND & HART LLP

*/s/ Bryce Kunimoto*
Bryce K. Kunimoto, Esq.
Robert J. Cassity, Esq.
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1

Melissa Y. Lou, Esq.
555 17th Street, Suite 3200
Denver, CO 80202

*Attorneys for Defendant*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Brian Sciara ("Plaintiff" or "Sciara") repeatedly violated this Court's Protective Order [ECF No. 22] by intentionally disseminating Defendant Stephen Campbell's ("Defendant" or "Campbell") confidential financial records of his company, MiCamp Solutions, LLC ("MiCamp") to an unrelated third-party, Fiserv. Sciara does not and cannot dispute that he violated the Court's Protective Order. Indeed, Sciara admits that he purposefully disclosed the financial records he obtained in this case—records he was only able to obtain under the provisions and protections of the Protective Order—to advance his own interests in a separate litigation in Clark County. [*See* ECF No. 73, at 6 (Plaintiff's Response to Motion for Order to Show Cause)]. Sciara now attempts in his Response to justify his violative conduct on four grounds, each of which is unavailing: first, that the confidential financial records belong to MiCamp rather than Campbell [ECF No. 73, at 5]; second, that his violative disclosure of these financial records was "an accidental, inadvertent mistake" as a result of not having been "advised" by his prior counsel, McDonald Carano LLP, of the existence of the Protective Order or that it governed the financial records [*id.* at 6-7]; third, that Campbell's counsel did not advise Sciara's counsel of the unauthorized disclosure [*id.* at 8-9]; and fourth, that Campbell suffered no harm because the financial records would have been discoverable in the Clark County action [*id.* at 7]. As set forth below, each of Sciara's arguments fail.

Moreover, Sciara's Opposition is quite telling for what it does not say. While Campbell's motion has raised "serious concerns that Sciara's violations of the Protective Order may not be limited to the instances detailed [therein,]" [ECF No. 59, at 8], Sciara's declaration failed to address whether there have been any further unauthorized disclosures of Campbell's confidential documents in violation of the Protective Order. While Sciara's lawyer has stated in her declaration that she has "not provided any third party with any other documents that are the subject of the Protective Order" [ECF No. 73-3, ¶ 9], Sciara's declaration is disturbingly absent of such language. Nonetheless, while the full extent of Sciara's violations of the Protective Order is unclear at this time, Sciara made clear in his deposition that he wanted to ruin Campbell

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

financially, and his deliberate disclosure of Campbell's confidential financial information are actions consistent with Sciara's stated intent. [*See* **Exhibit 1,** at 202:6-10 (Transcript Excerpts of Deposition of Brian Sciara)]. Campbell respectfully requests that the Court issue an order to show cause why Sciara should not be held in contempt for violating the Court's Protective Order, allow limited discovery necessary to determine the full extent of Sciara's violations of the Protective Order, and enter appropriate sanctions against Sciara.

## II.   ARGUMENT.

### A.   Campbell Properly Seeks to Enforce the Court's Protective Order.

Sciara attempts to obfuscate his violation of the Protective Order by asserting that Campbell "lacks standing" to bring the instant Motion for Order to Show Cause because confidential financial records at issue purportedly belong to MiCamp rather than to Campbell. [ECF No. 73, at 5]. To the contrary, Campbell is a party to the Protective Order, Campbell designated the subject documents as "Confidential" under the Protective Order, and Campbell has a right as a party in the litigation to petition the Court for relief due to Sciara's violations of the Court's Protective Order. The Protective Order states that it is "applicable to and govern[s] the handling of documents, . . . responses to requests for production of documents, and all other discovery obtained pursuant to the Federal Rules of Civil Procedure or other legal process by or from, or produced on behalf of, a party in connection with this action." [ECF No. 22, at 1]. Campbell's production of MiCamp's confidential financial records in connection with this action clearly fall within the scope of the Protective Order.

Sciara wants to have his cake and eat it too, which he cannot do. Notably, Sciara served document requests demanding that *Campbell* produce MiCamp's financial records. [*See* **Exhibit 2**, RFP No. 18 (May 20, 2019 document request issued by Sciara's expert, Kotzin Valuation Partners, requesting that Campbell produce "[a]ll bank statements associated with Sprout Financial and its subsidiaries" and specifically naming MiCamp)]. Campbell agreed to produce the requested documents subject to the protections of the Protective Order and designated the documents as "Confidential." Yet after receiving MiCamp's confidential financial records from Campbell through discovery in this action, Sciara now tries to argue that

4

1 Campbell has no "standing" to ask that the Court hold Sciara accountable for the unauthorized
2 dissemination of the very same confidential financial records. But as a part-owner and manager
3 of MiCamp, Campbell certainly has an interest in protecting the confidentiality of MiCamp's
4 financial information. [*See* **Exhibit 3**, ¶¶ 3-4 (Declaration of Stephen Campbell)]. Campbell is
5 simply asking that the Court hold Sciara accountable for his repeated violations of the Court's
6 Protective Order.

      **B.    Campbell is Entitled to Limited Discovery Regarding Sciara's Purported Ignorance of the Protective Order.**

9 There is no question that Sciara's disclosure of the confidential financial records
10 was intentional[1]— rather, the main questions that remain are whether Sciara acted in willful
11 defiance of the Protective Order and whether Sciara disclosed other documents in violation of the
12 Protective Order. With respect to the first question regarding willfulness, Sciara's assertion that
13 both he and his present counsel were unaware of a protective order in this case cannot be
14 credited. The bottom of each and every page of MiCamp's financial statements was clearly
15 marked "Confidential." [*See* ECF No. 59, Exhibits 1, 4, & 5]. Both Sciara and Sciara's counsel
16 apparently reviewed these financial statements when choosing specific statements to disclose to
17 Fiserv. [*See* ECF No. 59, Exhibit 2 ("[T]here are other examples of these payroll payments I can
18 send you as well.")]. And Sciara's counsel's own communications demonstrate that she was
19 plainly aware that Sciara had received these "Confidential" documents as part of discovery in the
20 instant action. [*See* ECF No. 59, Exhibit 2 ("I am attaching a couple items to this email ***that my***
21 ***client received as part of discovery in his other lawsuit against Stephen Campbell***." (emphasis
22 added))]. While Sciara's counsel now states that they were "not advised by Plaintiff or
23 Plaintiff's former counsel at Mc[D]onald Carano LLP that some of the documents provided [by
24 Sciara] were subject to a Protective Order in the instant case" [ECF No. 73-3, ¶ 5], this is nothing
25 more than willful ignorance. The designation of each of the subject documents as "Confidential"

---

[1] Sciara intentionally used Campbell's confidential documents for his own personal gain. Sciara's declaration acknowledges that he used Campbell's documents "in furtherance of settlement discussions" against another defendant in a separately filed lawsuit. [ECF No. 73-2, ¶ 7].

clearly put Sciara's counsel on notice that they were subject to a protective order and any reasonable practitioner would have inquired and/or reviewed the public court docket in this action to determine whether the Court had issued a protective order.

Moreover, Sciara has put at issue his discussions with prior counsel by contending that his prior counsel did not advise him of the Protective Order. *See* ECF No. 73-2, ¶ 7 (Declaration of Brian Sciara) ("I was not advised and did not understand that some of the documents that were provided to me by McDonald Carrano were subject to a Protective Order, and that the documents were not to be disclosed to third-parties."). Sciara claims that he "was not aware that a 'protective order' existed in the case." [ECF No. 73, at 6]. Campbell respectfully requests that the Court permit limited discovery with respect to Sciara's communications with his prior counsel, McDonald Carano,[2] regarding the Protective Order. It is well established that a litigant may not use the attorney-client privilege "both as a sword and a shield." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). The attorney-client privilege may be implicitly waived "[w]here a party raises a claim which in fairness requires disclosure of the protected communication." *Id.* (citation and internal quotation marks omitted). Here, Sciara has implicitly waived the attorney-client privilege with his prior counsel by affirmatively relying on prior counsel's apparently insufficient advice. *See, e.g.*, *United States ex rel. Calilung v. Ormat Indus.*, No. 3:14-cv-00325-RCJ-VPC, 2016 U.S. Dist. LEXIS 100292 (D. Nev. Aug. 1, 2016) (holding that a party waived attorney-client privilege by asserting good faith belief in the lawfulness of its conduct, and that the party may either abandon this defense or produce the attorney-client communications that fall within the scope of the implied waiver). Campbell recognizes that Sciara's assertion that he was not advised by his prior counsel of the existence of the Protective Order may require the difficult task of proving a negative. Nonetheless, Campbell submits that limited discovery regarding any communications that Sciara had with prior counsel regarding the Protective Order is warranted because Sciara affirmatively put the advice, or lack thereof, of his prior counsel directly at issue.

---

[2] Glaringly absent from Sciara's Opposition is any declaration from McDonald Carano LLP acknowledging that their attorneys failed to properly advise Sciara of the Protective Order.

In sum, Sciara's claimed lack-of-knowledge[3] defense is completely meritless considering the numerous indications that the confidential financial records produced by Campbell were subject to a Protective Order, as well as the fact that Sciara designated certain portions of his own discovery productions "as CONFIDENTIAL pursuant to the Confidentiality and Protective Order that is anticipated to be entered in this matter." [*See, e.g.*, **Exhibit 4** (Sciara's 3rd Supp. Disclosures)]. Although the Court should reject this argument outright, Campbell respectfully requests limited discovery pertaining to Sciara's knowledge on this issue.

## C. Section 14 of the Protective Order Does Not Require Campbell to Inform Sciara that Sciara Violated the Protective Order.

The Court should also reject Sciara's gross mischaracterization of Section 14 the Protective Order. Contrary to what Sciara suggests, Campbell was not required to first inform Sciara of Sciara's own violative conduct prior to filing the instant Motion for Order to Show Cause. Sciara's argument that Section 14 of the Protective Order somehow absolves him of responsibility for violating the Protective Order and prohibits Campbell from seeking redress for Sciara's unauthorized, damaging conduct is utterly without merit. [*See* ECF No. 73, at 8-9]. Section 14 of the Protective Order does not apply to circumstances such as those at issue here. Section 14 provides:

> If any party learns of any unauthorized possession, knowledge, use or disclosure of any Confidential Information or Highly Confidential Information, the party shall immediately notify in writing the other parties. ***The party learning of such unauthorized possession, knowledge, use or disclosure shall promptly furnish the other parties with the full details of such possession, knowledge, use or disclosure***. With respect to such unauthorized possession, knowledge, use or disclosure the parties shall work cooperatively to prevent its recurrence."

[*Id.* (emphasis added)]. By its terms, Section 14 contemplates circumstances where a party receiving Confidential or Highly Confidential information learns of an unauthorized disclosure of the producing party's information and reports this disclosure to the producing party, such that

---

[3] Sciara's contention that he was unaware of the protective order entered in this case is also belied by the fact that he was physically present at the deposition of Micah Kinsler [**Exhibit 5**, at 7 (Transcript Excerpts of Deposition of Micah Kinsler)], during which the Court's Protective Order was discussed [*id*. at 192-93].

7

the parties can work together to prevent recurrence. Here, Sciara received and then purposefully disseminated Campbell's Confidential Information to a third-party, Fiserv. The producing party, Campbell, cannot be expected to police whether and when the receiving party, Sciara, makes an unauthorized disclosure, and then inform Sciara of his own violative conduct. Campbell relied on the assurances of the Protective Order and assumed that Sciara would comply with such Court orders. Campbell had no obligation to "furnish" Sciara with the "full details" of Sciara's own dissemination of the confidential financial information. [*Id.*] Only Sciara and Sciara's counsel know the full extent of the damage that Sciara intentionally inflicted on Campbell. If anything, it was Sciara's obligation to self-disclose his own violations of the Protective Order to Campbell, provide the "full details" of the violation (something Sciara still has not done), and work cooperatively to prevent any further violations of the Protective Order. In addition, any insinuation that Campbell's lawyers should have notified Sciara of his violations would not have cured Sciara's intentional disclosure of these documents.

Section 14 was not intended to remind parties of their obligations under the Protective Order or to require notice to a party that it had violated the Protective Order. Even if Section 14 applied to Sciara's conduct, which it does not, nothing in Section 14 requires notice before filing the Motion for Order to Show Cause.

**D.   Campbell Has Been Harmed by Sciara's Violative Conduct and Expedited Discovery Is Warranted.**

Sciara's unauthorized dissemination of MiCamp's confidential financial statements has caused damage to MiCamp's and Campbell's business relationships. [*See* **Exhibit 3**, ¶¶ 3-8. The full extent of this damage is presently unknown to Campbell,[4] and Campbell is unable to quantify this damage without additional discovery. As indicated in his Motion, Campbell has substantial concern that Sciara's violations of the Protective Order may not be limited to the instances presently known to Campbell and described in the Motion. [ECF No. 59, at 8]. Sciara's declaration does not address whether he has disclosed any other documents designated

---

[4] While the full extent of the damages is not known, what *is* known is that Sciara testified in his deposition that he wanted to ruin Campbell financially. [*See* **Exhibit 1**, at 202].

8

by Campbell as "Confidential" to any third parties in violation of the Protective Order. [*Compare* ECF No. 73-3, ¶ 9 (Declaration of Alanna Bondy) ("I have not provided any third-party with any other documents that are subject to the Protective Order in the instant case.") *with* ECF No. 73-2 (Declaration of Brian Sciara) (omitting any representation to this effect)].

Campbell's concerns remain even if Sciara is to be believed that he did indeed act in ignorance rather than purposeful violation of the Protective Order, as Sciara's ignorance of the Protective Order may have contributed to further, additional violations of the Protective Order that are presently unknown to Campbell. For this reason, Campbell respectfully requests that the Court grant limited discovery for Campbell to ascertain the full extent of Sciara's violations, with the associated fees and costs to be borne by Sciara.

Sciara tries to argue, to no avail, that Campbell cannot have suffered any harm because MiCamp's financial records are relevant to the Clark County action and would have been discoverable. [ECF No. 73, at 7]. But the mere fact that discovery subject to the Protective Order in this case may be discoverable in another case does not justify Sciara's violations of the Protective Order, nor does it lead to the conclusion that Campbell was not harmed. Sciara's unauthorized disclosure of MiCamp's confidential financial records, including the manner and timing of the disclosure, caused damage to Campbell's business relationships. [**Exhibit 3**, ¶¶ 3-8]. Moreover, sanctions are warranted against Sciara even absent a showing of specific harm to Campbell. *See Carter v. Otis Elevator Co.*, No. 3:11-CV-0662-VPC, 2014 WL 1309192 (D. Nev. Mar. 28, 2014) (ordering sanctions without assessing whether specific harm occurred from the violation of protective order); *see also Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001) (holding that a district court may levy sanctions pursuant to its inherent power for willful disobedience of a court order or when a party has acted in bad faith).

Moreover, in the event this Court were to grant the instant motion and award Campbell his reasonable attorney's fees and costs for having to file this motion, Campbell will submit the appropriate documentation at that time.

///

///

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in Campbell's Motion for Order to Show Cause, Campbell respectfully requests that the Court require Plaintiff to show cause as to why the Court should not hold him in contempt. Campbell requests that the Court allow limited discovery to ascertain the full extent of Sciara's violations and that the Court accordingly impose sanctions necessary to punish Sciara and deter him from further violations of the Court's order, including an award of reasonable attorney's fees and costs incurred by Campbell in connection with seeking relief for Sciara's violations of the Protective Order.

DATED this 10th day of February, 2021.

HOLLAND & HART LLP

*/s/ Bryce Kunimoto*
Bryce K. Kunimoto, Esq.
Robert J. Cassity, Esq.
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

Melissa Y. Lou, Esq.
555 17th Street, Suite 3200
Denver, CO 80202

*Attorneys for Defendant*

### INDEX OF EXHIBITS

| Exhibit | Description | Page No. |
|---|---|---|
| 1 | Transcript Excerpts of Deposition of Brian Sciara | 1 – 11 |
| 2 | May 20, 2019 document request issued by Sciara's expert, Kotzin Valuation Partners | 12 – 17 |
| 3 | Declaration of Stephen Campbell | 18 – 20 |
| 4 | Sciara's 3rd Supp. Disclosures | 21 – 26 |
| 5 | Transcript Excerpts of Deposition of Micah Kinsler – FILED UNDER SEAL | 27 – 38 |

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 10th day of February, 2021, I served a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE PROTECTIVE ORDER** via email to the persons and addresses listed below :

SGRO& ROGER
Anthony P. Sgro, Esq. – tsgro@sgroandroger.com
Jennifer Willis Arledge, Esq. – jarledge@sgroandroger.com
720 South 7th Street, Third Floor
Las Vegas, NV 89101

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　*/s/ Valerie Larsen*
　　　　　　　　　　　　　　　　　　　An Employee of Holland & Hart LLP

16156848