1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4

\* \* \*

5

6

Brian Sciara,

Case No. 2:18-cv-01700-DJA

Plaintiff,

7

**Order**

v.

8

Stephen Campbell,

9

Defendant.

10

11

12          This is a business dispute arising out of a venture between Defendant Stephen Campbell

13   and Plaintiff Brian Sciara. Sciara—who owns CapFund Enterprises, Inc.—and Campbell—who

14   owns MiCamp Solutions, LLC—worked together to create a third company, Sprout Financial,

15   LLC. After the business venture fell apart, Sciara sued Campbell in the instant case. (Case No.

16   2:18-cv-01700-DJA). Sprout Financial then sued CapFund, Sciara, Sciara's wife Jennifer Sciara,

17   and Funded LLC (another of Sciara's businesses) in a case that was transferred and eventually

18   consolidated with this case. (Case No. 2:21-cv-00309-JAD-NJK, ECF No. 1-3). Sciara sues

19   Campbell for damages and injunctive relief, alleging breach of contract, unjust enrichment, and

20   seeking declaratory relief.[1] (ECF No. 1). Sprout sues Sciara, Jennifer Sciara, and Sciara's

21   businesses for fraud, fraud in the inducement, breach of fiduciary duty, and seeks declaratory

22   relief. (Case No. 2:21-cv-00309-JAD-NJK, ECF No. 1-3).

23          Now, Campbell moves for sanctions, asserting that Sciara violated the protective order

24   governing the exchange of confidential and highly confidential "Attorneys' Eyes Only"

25   documents. (ECF No. 165). The Court ordered a forensic examination of Sciara's devices in

26

27
_____
[1] The Court dismissed Sciara's tort claims on jurisdiction grounds, which dismissal the Ninth
28   Circuit upheld. (ECF No. 61 at 5).

connection with Campbell's motion.  (ECF No. 124).  Now that the forensic exam has concluded,

Campbell asks for dispositive sanctions, or in the alternative, a mix of monetary sanctions,

evidentiary sanctions, and injunctive relief.  (ECF No. 165).  Because the Court finds that Sciara

did violate the protective order, but that those violations do not support the certain of the

sanctions Campbell requests, it grants in part and denies in part Campbell's motion for sanctions.

Campbell also moves to seal exhibits to his motion for sanctions.  (ECF No. 164).  Sciara

does not oppose the motion.  Because the Court finds that Campbell has demonstrated good

cause, and because Sciara does not oppose, the Court grants Campbell's motion to seal.  (*Id.*).

I.      Background.

        A.      *Campbell's motion for an order to show cause and initial sanction motion.*

        The parties stipulated to, and the Court entered, a protective order governing the exchange

of sensitive information in this case on February 7, 2019.  (ECF No. 22).  On December 23, 2020,

Campbell moved for an order to show cause why Sciara should not be held in contempt of court

for violating the protective order.  (ECF No. 59).  In that motion, Campbell argued that Sciara had

violated the protective order by sending three emails in September of 2020 containing

confidential documents to an unauthorized party: Sciara's counsel in a separate state court action

Sciara had filed against Campbell's company.  (*Id.* at 5-6).  Because Sciara had not yet retained

his state-court counsel—the law office of Sgro and Roger—in the federal action at the time, his

state-court counsel were unauthorized parties.  (*Id.* at 5-6).  Sciara's counsel in the state court

action then emailed the documents to Campbell's business partners, also unauthorized parties.

(*Id.*).  Finding that Sciara had violated the protective order, the Court granted Campbell's motion

in part, enjoined Sciara from violating the protective order in the future, and ordered Sciara to pay

Campbell's attorneys fees for the motion.  (ECF No. 88).

        On April 9, 2021, Campbell again moved for sanctions after discovering that, on May 15,

2020 Sciara had emailed confidential documents to more unauthorized parties.  (ECF No. 99).

The recipients included Shift4—a company with whom Campbell does business—Kellie

McGhee—a detective with the Phoenix police department—and the Arizona Attorney General's

office.  (*Id.* at 7-8).  Sciara's email urged Shift4 to investigate Campbell's business.  (ECF No.

1    99-6 at 2-3).  Campbell pointed out that, because Sciara had emailed these unauthorized parties

2    even before Sciara's September 2020 emails to his then-unauthorized counsel, he should have

3    disclosed the May 15, 2020 email at the hearing on Campbell's motion for order to show cause.

4    (ECF No. 99 at 6).  Instead, at that hearing, Sciara's counsel represented that they "confirmed and

5    would expect [Sciara] to testify under oath if necessary that he did not disclose the information to

6    anyone other than our office and the experts in this case pursuant to the terms of the protective

7    order."  (*Id.* at 6).  Campbell argued that this constituted a lie to the Court.  (*Id.* at 12-13).

8           The Court granted Campbell's request for a forensic examination of Sciara's devices to

9    determine whether Sciara had violated the protective order on any other occasions.  (*Id.* at 17).  It

10   deferred ruling on the sanction request until the conclusion of the exam.  (ECF No. 124).  It later

11   asked Campbell to renew his motion for sanctions upon the conclusion of the exam so that the

12   motion would incorporate any additional violations of the protective order.  (ECF No. 158).

13          ***B.       Results of the forensic exam.***

14          The forensic exam revealed violations that fall into two categories: (1) disclosure

15   violations where Sciara or his counsel sent confidential documents to unauthorized parties; and

16   (2) possession violations where Sciara had highly confidential documents marked "Attorneys'

17   Eyes Only" in his possession.  (ECF No. 165 at 12-23).  The exam uncovered eleven more

18   disclosure violations than the five which Campbell had already brought up in his motion for order

19   to show cause and initial motion for sanctions.  *Compare* (ECF No. 59 at 5-6) (identifying four

20   disclosures) *with* (ECF No. 97 at 6-7) (identifying one disclosure) *and* (ECF No. 165 at 12-23)

21   (identifying eleven disclosures).[2]  Each of the disclosure violations occurred in either 2019 or

22   2020, before Campbell's original motion for an order to show cause.  (ECF No. 59 at 5-6); (ECF

23   No. 97 at 6-7); (ECF No. 165 at 12-23).  The exam also uncovered six possession violations

24

25   [2] For the sake of simplicity, the Court refers to each individual email that Sciara sent to
     unauthorized parties containing confidential information as a separate disclosure.  However, it
26   recognizes that, in many instances, the individual email constituted multiple violations because it
     was sent to multiple unauthorized parties and/or contained multiple confidential documents.  *See*
27   (ECF No. 165 at 15) (describing Sciara's May 15, 2020 disclosure of thirteen confidential
     documents to four unauthorized parties).
28

1    spanning from April 2019 to July 2021.  (ECF No. 165 at 12-23).  The exam demonstrated that

2    Sciara violated the protective order on at least twenty-two occasions.  (*Id.* at 26).

3           **C.      *Campbell's renewed motion for sanctions.***

4           Now that the exam is complete, Campbell asks for either case dispositive sanctions or a

5    mix of injunctive relief, evidentiary sanctions, and monetary sanctions.  (ECF No. 165).  Arguing

6    for case dispositive sanctions, Campbell points out that Sciara is a direct competitor of Campbell,

7    making his violations—which involve sending Campbell's confidential information to business

8    partners and government agencies and possessing "Attorneys' Eyes Only" information—more

9    egregious.  (*Id.* at 26, 28-29).  Worse, Campbell asserts, Sciara then lied about his use of this data

10   to the Court when his attorney stated that "no other documents that are subject to the Protective

11   Order in this matter have been disclosed to any third-party."  (*Id.* at 29).  Because Sciara

12   intentionally used Campbell's information to attack his business relationships and urge business

13   partners and government agencies to initiate investigations, Campbell asserts that dispositive

14   sanctions are warranted.  (*Id.* 30-33).

15          At a minimum, Campbell asks the Court to impose injunctive relief, evidentiary sanctions,

16   and monetary sanctions.  (*Id.* at 34).  Campbell asks the Court to prohibit Sciara from supporting,

17   opposing, or introducing designated matters in evidence regarding Sciara's unjust enrichment

18   claim or that the Court impose an adverse inference on this claim.  (*Id.* at 34).  Campbell also asks

19   the Court to deem as established all of Sprout's fraud in the inducement claim.  (*Id.* at 35-36).

20   Regarding injunctive relief, Campbell asks the Court to expand the existing injunction to require

21   Sciara and anyone acting on his behalf to seek written authorization from Campbell or the Court

22   before using the documents "for any other purpose than this case."  (*Id.* at 38).  Finally, Campbell

23   asks that the Court award,

24              attorney's fees and costs that Campbell has incurred in connection
                with Sciara's violations of the Protective Order in connection with
25              any ultimate sanction imposed.  This request includes the attorney's
                fees in connection with this Motion, the Preliminary Motion (ECF
26              Nos. 97, 99), as well as all attorney's fees and costs incurred by
                Campbell in connection with the Forensic Examination of Sciara's
27              devices and ESI, and for all the fees that have been and will be
28

incurred in connection with the instant Motion and the Preliminary
Motion.

> (*Id.* at 39).

Sciara responds that sanctions are unwarranted.  He argues that the forensic exam found nothing new that would warrant the sanctions Defendant seeks.  (*Id.* at 2).  He points out that he has not made any further disclosure violations after Campbell's original motion for an order to show cause.  (*Id.* at 2, 10).  In fact, all the disclosures that the exam uncovered predated Campbell's original motion and Sciara argues were due to a misunderstanding of the protective order.  (*Id.* at 2, 10).  Sciara asserts that he had legitimate reason to believe that Campbell was engaging in criminal activity and thus, legitimate reason to use the documents to report to businesses and law enforcement.  (*Id.* at 13).  And every other disclosure violation was to Sciara's own attorneys, who—while unauthorized at the time—eventually represented him in the instant matter.  (*Id.* at 8-9).  Moreover, since the Court's decision on the original motion,

> [Sciara] made [the sanction] payment and it was enough to impress
> upon him the severity of further disclosure.  He has not disclosed
> any documents designated as confidential since that time…[Sciara]
> has been very careful with disclosure, inadvertent or otherwise, even
> during discussions with counsel.

> (*Id.* at 10).

Regarding the possession violations, Sciara points out that they all occurred because his counsel—who he has since fired—emailed them to Sciara inadvertently or because Sciara was present at depositions.  (*Id.* at 6).

Because the violations are not as egregious as Campbell asserts, Sciara argues that dispositive sanctions are inappropriate.  (*Id.* at 10).  Campbell has not been prejudiced unduly, in part because Campbell has sued Sciara in a separate action regarding the outcome of Sciara's disclosures.  (*Id.*).  Sciara adds that the law enforcement entities to whom Sciara sent some of the information are not likely to disclose the information, lessening the negative impact of the disclosure.  (*Id.*).

Regarding Campbell's request for evidentiary sanctions, Sciara asserts that the sanctions are unrelated to the disclosures, making them unjust.  (*Id.* at 11-12).  Regarding the injunction

1    language, Sciara argues that it is repetitive and unnecessary because he is already responsible for

2    those acting on his behalf. (*Id.* at 12). And regarding monetary sanctions, Sciara points out that

3    he has already paid Campbell's $17,494.65 in attorneys' fees for the original motion for order to

4    show cause. (*Id.* at 4). On top of that, he has paid his own attorneys' fees for the motion practice

5    related to the renewed sanctions motions, the forensic exam totaling $8,023.49, and ongoing

6    monthly storage fees for the contents of the exam. (*Id.* at 11). Sciara adds that the Court should

7    also consider the stress of dealing with the "forensic search of all of his personal details on his

8    personal laptop…" (*Id.* at 3). Sciara asks the Court to not enter any further sanctions. (*Id.* at 14-

9    15).

10          Campbell replies that Sciara has failed to give any justification for the violations or

11   explain why the Court should not sanction him for them. (ECF No. 184). Campbell asserts that

12   Sciara's attempt to downplay the violations ignores that Sciara has only ever been sanctioned for

13   four out of the twenty-two total violations. (*Id.* at 2). Campbell addresses Sciara's assertion that

14   the possession violations are less prejudicial to Campbell by explaining again that Sciara and his

15   companies are Campbell's direct competitors. (*Id.* at 5-6). And the business and financial

16   information that Campbell produced under the expectation that only attorneys would see it, is

17   now in dangerous hands. (*Id.*). Worse, Sciara has not provided any reassurances that he has

18   destroyed the confidential and highly confidential information in his possession. (*Id.* at 5).

19   Regarding Sciara's assertion that Campbell is already seeking recourse for the disclosure

20   violations through a separate suit—and thus sanctions are unnecessary here—Campbell argues

21   that sanctions are different than damages and Sciara should not be permitted to conflate the two to

22   his benefit. (*Id.* at 8). Regarding Sciara's assertion that he received certain documents designated

23   "Attorneys' Eyes Only" in depositions, Campbell argues that "none of the highly confidential

24   documents at issue resulted from Sciara's presence at depositions." (*Id.* at 5). Campbell

25   reiterates that sanctions—dispositive or a mix of evidentiary, monetary, and injunctive—are

26   warranted. (*Id.* at 6-13).

27

28

**D.**      ***Campbell's motion to seal.***

Campbell moves to seal the exhibits to his motion for sanctions.  (ECF No. 164).  He explains that he has designated the documents confidential under the protective order.  (*Id.* at 4). And he adds that the unprotected disclosure of this information will likely result in competitive or business injury to him and his businesses because the documents include financial and competitive documents.  (*Id.*).  Regarding exhibit number 36, Campbell "makes no assertions and is merely taking reasonable steps to maintain its confidentiality in accordance with the Protective Order."  (*Id.*).  Sciara did not respond to this motion.

**II.      Discussion.**

**A.      *The Court grants in part and denies in part Campbell's motion for sanctions.***

Federal Rule of Civil Procedure 37(b)(2) authorizes the Court to impose sanctions when a party fails to comply with a court order related to discovery.  *See* Fed. R. Civ. P. 37(b)(2).  The Court will first determine whether a discovery violation occurred and second, what sanction is appropriate.  *See Greene v. Wal-Mart Stores, Inc.*, No. 2:15-cv-00677-JAD-NJK, 2016 WL 829981, at *4 (D. Nev. Jan. 26, 2016).  Here, Sciara violated the protective order.  However, the Court finds that only one of Campbell's requested sanctions—injunctive relief—is appropriate.

1.      The Court denies Campbell's request for dispositive sanctions.

The sanctions available under Rule 37(b) include striking pleadings.  Fed. R. Civ. P. 37(b)(2)(i)-(iii).  Courts in the Ninth Circuit apply a five-factor test when deciding whether to impose the harsh penalty of case dispositive sanctions.  *See Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991).  The court evaluates: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). The first two of these factors favors the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction.  *Id.*  Thus, the key factors are prejudice and availability of lesser sanctions.  *Id.*

1    Dispositive sanctions are not warranted here.  First, while the public has an interest in

2    expeditious resolution of litigation, and while the process to uncover the extent of Sciara's

3    violations have stalled this litigation, this order will put an end to this process and allow the case

4    to proceed.  Second, while the Court has an interest in managing its docket, the Court finds this

5    order—which will move the case forward—to sufficiently fulfill that goal.  Third, the risk of

6    prejudice to Campbell by Sciara having possession of his highly confidential documents is great,

7    but it can be remedied in other ways.  As discussed more fully below, requiring Sciara to return or

8    destroy all confidential information in his possession and placing him under a further injunction

9    to prevent any future disclosures is sufficient when balancing the prejudice of the violations with

10   the prejudice of dismissal.  And while Campbell was prejudiced when Sciara emailed confidential

11   documents to third parties, Sciara has not disclosed confidential documents since Campbell's

12   initial motion for an order to show cause.  It also appears that the third parties to whom Sciara has

13   sent the information have also declined to take the investigatory action Sciara urged.

14       Fourth, the public policy of deciding this case on its merits is strong here.  Both sides have

15   very different views of how the venture between them failed and which side is responsible.

16   Based on the discrepancy between Campbell's allegations and Sciara's—along with the failure of

17   settlement negotiations—both sides have an interest in adjudicating this case on its merits and not

18   on a sanctions motion.  Fifth, less drastic sanctions are available—and appropriate—here.

19       2.       The Court denies Campbell's request for evidentiary sanctions.

20       Courts are also empowered to impose evidentiary sanctions under Rule 37 when a party

21   fails to comply with a discovery order.  *See* Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2) contains two

22   standards—one general and one specific—that limit a district court's discretion.  First, any

23   sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim'

24   which was at issue in the order to provide discovery."  *Navellier v. Sletten*, 262 F.3d 923, 947 (9th

25   Cir. 2001).  Sanctions must bear a reasonable relationship to the subject of discovery that was

26   frustrated by the sanctionable conduct.  *See id.*  Under Rule 37(b)(2), the court may direct that

27   designated facts be taken as established for the purposes of the action, as the prevailing party

28   claims.  Fed. R. Civ. P. 37(b)(2)(i).  The Rule also permits the court to prohibit the disobedient

1   party from supporting or opposing designated claims or defenses or from introducing designated

2   matters in evidence.  Fed. R. Civ. P. 37(b)(1)(ii).  Evidentiary sanctions precluding a party from

3   introducing evidence are "typically reserved only for flagrant abuses."  *Leftenant v. Blackmon*,

4   No. 2:18-cv-01948-EJY, 2022 WL 363841, at *2 (D. Nev. Feb. 7, 2022).

5          Campbell's request fails on the second requirement: that the sanction be specifically

6   related to the particular claim which was at issue in the order to provide discovery.  Campbell has

7   not connected the claim he seeks to prevent Sciara from proving—unjust enrichment—or the

8   claim he seeks to establish for Sprout—fraud in the inducement—to Sciara's violations of the

9   protective order.  While Campbell argues that Sciara's unclean hands prevent Sciara from seeking

10  equitable relief, that both require equitable considerations is not enough of a connection for the

11  Court to preclude Sciara from pursuing his claim.  For example, Campbell has not shown that,

12  because of Sciara's actions, Campbell now lacks the ability to defend against Sciara's unjust

13  enrichment claim.

14         Nor has Campbell shown that the violations are sufficiently flagrant to support this

15  sanction.  Nearly all of Sciara's disclosure violations occurred when he sent his attorneys

16  confidential documents, and his attorneys then sent those documents to others.  It does not appear

17  that Sciara's former attorneys warned him about the consequences of sending confidential

18  documents when they were not yet retained in this matter, or even appreciated those

19  consequences themselves.  Additionally, Sciara's possession violations occurred because his

20  attorneys sent him "Attorneys' Eyes Only" documents.  Its unclear what discussions Sciara and

21  his attorneys had surrounding these violations, but it is clear that Sciara was not the only

22  individual involved.  And of the people involved, Sciara was the individual least likely to grasp

23  the fact that he was violating the protective order by having these documents in his possession.

24  This cuts against the notion that Sciara violated the protective order "flagrantly" enough to

25  warrant an evidentiary sanction preventing him from supporting his unjust enrichment claim.

26         Similarly, Campbell has not shown that Sciara's actions inhibit Sprout's ability to support

27  its fraud in the inducement claim.  While Campbell argues that Sciara's actions are an extension

28

1    of his fraud, that Sciara's actions could support Sprout's theory of liability is not a reason for the

2    Court to find it conclusively established.  Evidentiary sanctions are inappropriate here.

3               3.      The Court denies Campbell's request for attorneys' fees.

4          Rule 37(b)(2)(C) provides that "in addition to the orders above, the court must order the

5    disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

6    including attorney's fees, caused by the failure…"  Fed. R. Civ. P. 27(b)(2)(C).  If the "failure

7    was substantially justified or other circumstances make an award of expenses unjust," the court

8    need not award fees.  Fed. R. Civ. P. 37(b)(2)(C).  The fact that a party might consider its own

9    position reasonable does not establish substantial justification.  *See, e.g.*, *Wood v. GEICO*

10   *Casualty Co.*, No. 2:16-cv-00806-GMN-NJK, 2016 WL 6069928, at *2 (D. Nev. Oct. 14, 2016).

11         The Court will not order Sciara to pay Campbell's attorneys fees.  The Court has already

12   indicated its intent to consider paying for and undergoing the forensic exam to be part of Sciara's

13   sanction.  The Court finds the amount that Sciara has paid to undergo this process, and his

14   cooperation in doing so, to be sufficient.  Moreover, considering the nature of the violations the

15   forensic exam uncovered—mostly involving his attorneys or occurring before the original motion

16   for order to show cause—the Court finds additional sanctions unwarranted.

17              4.      The Court grants Campbell's request for injunctive sanctions.

18         The Court will impose Campbell's suggested language expanding the injunction against

19   Sciara using confidential information.  Campbell's proposed language—which would prevent

20   Sciara from using confidential information for any purpose but this case without written

21   permission—is proportional to the violations.  The Court thus modifies its current injunction to

22   include this language.

23         It will also require Sciara to destroy or return all the highly confidential "Attorneys Eyes

24   Only" information in his possession and provide Campbell with sufficient proof of that

25   destruction.  As Campbell points out, Sciara did not provide reassurances in his response about

26   what he has done to destroy or return the information.  Given Campbell's concerns about Sciara's

27   possession of his highly confidential documents—particularly because the two are competitors—

28

1      the Court will require the parties to meet and confer and decide whether it is appropriate for

2      Sciara to return or destroy the information.

3                    **B.      *The Court grants Campbell's motion to seal.***

4            A party seeking to file a confidential document under seal must file a motion to seal and

5      must comply with the Ninth Circuit's directives in *Kamakana v. City and County of Honolulu*,

6      447 F.3d 1172 (9th Cir. 2006) and *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092,

7      1097 (9th Cir. 2016).  For records attached to motions not more than tangentially related to the

8      merits of the case, the "good cause" standard applies.  *See Ctr for Auto Safety*, 809 F.3d at 1095,

9      1101.  That a party has designated a document as confidential under a protective order does not,

10     standing alone, establish sufficient grounds to seal a filed document.  *See Foltz v. State Farm*

11     *Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003); *see also Beckman Indus., Inc. v. Int'l*

12     *Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  Finally, the failure of a party to file points and

13     authorities in response to a motion constitutes a consent to the granting of the motion.  LR 7-2(d).

14           Here, Campbell has demonstrated good cause to seal the documents at issue.  The motion

15     for sanctions, while it seeks dispositive sanctions, is not more than tangentially related to the

16     merits of the case.  Instead, it deals with violations of the protective order, rather than the merits

17     of any claim.  The good cause standard thus applies.  And Campbell has explained that the

18     exhibits he seeks to seal consist of non-public financial information and/or commercially

19     sensitive business information, the unprotected disclosure of which will likely result in

20     competitive or business injury to Campbell and/or his business entities…" (ECF No. 164 at 4).

21     The Court finds this to constitute good cause.  And while Campbell does not provide as detailed

22     an explanation for sealing the document Sciara has designated confidential—tax returns for his

23     business—having reviewed it, and Campbell's motion, the Court finds sufficient good cause to

24     seal it as well.

25

26           **IT IS THEREFORE ORDERED** that Campbell's motion for sanctions (ECF No. 165) is

27     **granted in part and denied in part** as outlined in this order.

28

1    **IT IS FURTHER ORDERED** that Plaintiff Brian Sciara and any person(s) acting on his

2  behalf, is enjoined from violating the Protective Order (ECF No. 22) in the future by

3  disseminating any Discovery Material designated as Confidential or Highly Confidential to

4  anyone other than those persons identified in Sections 11-12 of the Protective Order.  Sciara, and

5  any person(s) acting on his behalf, is further enjoined from using Campbell's confidential or

6  highly confidential documents for any purpose other than this case unless Sciara obtains prior

7  written authorization from Campbell or this Court.

8    **IT IS FURTHER ORDERED** that the parties shall meet and confer regarding Sciara

9  returning or destroying the highly confidential documents in his possession.  Upon returning or

10  destroying these documents, Sciara shall provide reasonable assurances to Campbell that he has

11  done so.

12    **IT IS FURTHER ORDERED** that Campbell's motion to seal (ECF No. 164) is **granted.**

13

14    DATED: November 9, 2022

15    _____

16    DANIEL J. ALBREGTS
     UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28